FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 2 8 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Ivaylo Dodev,

c/o  38153 West Nina Street
      Maricopa, Arizona 85138
      (480) 457-8888 Phone
      (480) 457-8887 Facsimile
      dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ivaylo Dodev,** | **Case No.**   **CV24-02931-PHX-KML** |
| **Plaintiff,** | **COMPLAINT** |
| **v.** | |
| **CITIBANK, N.A.,**<br>**DOES 1-10,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**COMES NOW** Claimant, Ivaylo Dodev, in *pro se*, ("Plaintiff") with his Complaint against CITIBANK, N.A., Does 1 through 10, ("Defendant(s)" and/or Citi") and based on the herein asserted facts, information and belief alleges as follows:

### I
### OVERVIEW

1.    Plaintiff brings this action against Defendant to remedy violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1637(b)(2), 1643, and The Fair Credit Billing Act 15 U.S.C. §1666 ("FCBA") and its implementing Regulation Z, 12 C.F.R. Part 1026 ("Regulation Z"), along with Arizona Revised Statutes Title 44, Trade and

Commerce § 44-7803, [Consumer credit cardholder liability] ("A.R.S 44 § 44-7803")—amongst other violations—resulting in unwarranted financial burden, and emotional distress to Plaintiff.

2.      At all times relevant to this Complaint, Defendant, as a credit card issuer, failed to timely and reasonably investigate and appropriately resolve billing error notices and claims of unauthorized use ("fraud"), failed to appropriately credit Plaintiff's account when the evidence provided unequivocally supported an unauthorized charge ("scam") on Plaintiff Citi Custom Cash credit card ending in 3602.

3.      Plaintiff's Citi Cash card ("Citi Card") is in good standing, in accordance with the terms of the credit card agreement with the Defendant ("Citi's Contract"), as are the rest of his Citi credit cards.

4.      Prior to commencing the action at hand, Plaintiff gave Defendant ample time and veridical evidence that he had been a victim of a scam—specifically, unauthorized charges made while traveling abroad with his wife and daughter.

5.      More particularly, his Citi Card was charged twice while procuring a rental vehicle on vacation in Bulgaria.

6.      After exhausting all legal remedies under TILA and FCBA, Plaintiff asked Defendant[1] to close that dispute—which had been open under his Citi Card and Experian Credit Bureau [perhaps amongst other credit bureaus] beyond the time allowed under FCBA—so that he could pursue other legal means—as the action herein.

---

[1] Via final [third] certified letter mailed to Defendant on August 27, 2025

- 2 - | Page of Complaint

7.     On or about September 30, 2024, Plaintiff contacted the Citi executive office and spoke to a gentleman who introduced himself as Stephan Campbell.

8.     Over that phone call, Mr. Campbell disclosed to Plaintiff that Citi's choice to side with Merchant is <u>now final</u> because **<u>"we have no way of recovering these funds."</u>**

9.     The Plaintiff's determination to resolve the issue without legal intervention will become evident during these proceedings and discovery.

10.     **<u>This action should never have graced the docket of this court if Defendant had simply followed the laws in place and refrained from illicit, unlawful, and wanton practices aimed at defrauding Plaintiff of his US currencies.</u>**

11.     **Not being able to recover funds from a crook while holding the American consumer responsible sounds like a lucrative way to be made whole. <u>However, Plaintiff alleges that it is still illegal under the cited herein State and Federal laws.</u>**

12.     On or about October 21, 2024, the Defendant closed the dispute, making this action ripe for prosecution. *See* the screenshot below.



## II
## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action because it presents a federal question, pursuant to 28 U.S.C. § 1331 *et seq.*, In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over the Defendant because Citibank is National Association and conducts business in this District.

15.     Venue is pursuant to 28 U.S.C. 1391(b)(2) because the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## III
## PARTIES

16.     Plaintiff Ivaylo Dodev, is a natural-born individuals and, at all times, material hereto is Citizens of Arizona.

17.     All matters material to the disputed Citi Card transaction occurred in Pinal County, State of Arizona.

18.     Defendant, Citibank, N.A. is a national bank whose principal offerings include investment banking, commercial banking, cash management, trade finance, and e-commerce; private banking products and services; consumer finance, credit cards, and mortgage lending; and retail banking products and services.

19.     Defendant is headquartered at 5800 South Corporate Place, Sioux Falls, South Dakota 57108, County of Aurora.

20.     Defendant is the wholly owned subsidiary of Citigroup, Inc.,

- 4 - | Page of Complaint

headquartered at 388 Greenwich Street, New York, New York 10013.

21.    DOE 1 through 10 are unknown types of entities and/or employees of Defendant.

## IV
## CASE SYNOPSIS

22.    The FCBA, enacted and incorporated into TILA in 1974, includes substantive protections for credit card users who have billing errors or face an unauthorized use of their credit cards, as Plaintiff alleges herein.

23.    The billing error is a result of a rogue merchant who indiscriminatory charged Plaintiff's Citi Card twice while traveling abroad.[1]

24.    In complete and strict compliance with FCBA, TILA, and Regulation Z, Plaintiff sent a written certified communication to Defendant that was received no later than 60 days after Defendant sent the first periodic statement reflecting the alleged billing errors.

25.    In addition, Plaintiff specified the billing errors to enable Defendant to identify his name and account and provide Defendant with factual information on why he believes there were billing errors. *See* 12 C.F.R. § 1026.13(a)-(b).

26.    At all times relevant to this Complaint Defendant failed to properly investigate the alleged errors, (*See* 12 C.F.R. § 1026.13(c), (e), and (f)) and acted perniciously against Plaintiff, by repetitiously twisting—in bad faith and with an evil

---

[1] During Discovery, Plaintiff will provide dozens, if not hundreds, of instances in which the same Merchant has used the same scam to charge the credit cards of scores of unsuspecting foreign travelers.

mind—the facts and events pertinent to the alleged scam perpetrated by the Merchant.

27.    Moreover, Defendant failed to respond in writing to Plaintiff's certified communication[1] as requested and mandated by Regulation Z.

28.    Furthermore, Plaintiff flagged the alleged billing error as fraud and unauthorized use of his Citi Card. TILA's implementing Regulation Z defines *unauthorized use* as "the use of a credit card by a person, other than the cardholder, who does not have actual, implied, or apparent authority for such use, and from which the cardholder receives no benefit." (12 C.F.R. § 1026.12(b)(1)(i).)

29.    A claim of unauthorized use may also constitute a billing error notice if it meets Regulation Z's billing error notice requirements.

30.    At all times relevant to this Complaint, Defendant failed to resolve or otherwise close the dispute within two billing cycles (or, in any event, no later than 90 days) after receiving Plaintiff's billing errors' claims.

31.    Furthermore, in all times relevant to this Complaint, Defendant violates A.R.S 44 § 44-7803, reading in pertinent part, *"In no case is a cardholder liable for any charges or interest that result from the unauthorized use of a credit card."*

## V
## GENERAL FACTUAL CLAIMS

32.    On or about August 8, 2022 (midnight Istanbul, Turkey), Plaintiff booked a rental vehicle from EasyRent Bulgaria (the "Merchant"), while using his Citi Card.

---

[1] Prior to commencing this action, Plaintiff sent three certified letters to Defendant in good faith while being mindful of the judicial economy.

33.    Upon arrival in Sofia, Bulgaria, Plaintiff <u>was allowed to rent the vehicle</u> <u>from the Merchant with his US Driver's License ("DL")</u>.

34.    A few miles from the airport, the Plaintiff was sideswiped by the vehicle driving behind him when attempting to turn left on a two-way street with the turn signal on. The rental car was only scuffed and fully functional. In addition, the rental car was fully insured in accordance with the Bulgarian laws[1], and the accident could not have triggered any legitimate credit card charges beyond the agreed rental amount for the vehicle. The Plaintiff and his wife and daughter waited about three hours for the responding officers to arrive at the scene.

35.    Upon arrival, the police officers cited the Plaintiff for not having his US DL legalized or having an International Driving Permit ("IDP"). They also cited him <u>because the rental vehicle did not have a proper document of ownership ("Talon") and</u> <u>insurance, as required under Bulgarian traffic laws, prior to renting it to a client</u>. All those citations led to removal of the license plates from the rental vehicle and towing it back to the Merchant's office (constructive vehicle impound). The whole ordeal took about six hours in blistering heat.

36.    While waiting for the police to respond to the accident, the Plaintiff arranged a new vehicle rental with another rental company located at Sofia airport [same location]. They informed him that his US driver's license <u>ought to be legalized for him</u> <u>to take possession of the rental vehicle,</u> and they have spearheaded the process of his DL

---

[1] Under Bulgarian traffic laws, a client cannot rent a vehicle if not fully insured.

legalization—which is the law that all vehicle rental companies have to comply with.

37.     Back in the Merchant's office (not at the original airport rental kiosk), the Merchant informed the Plaintiff that it was his responsibility to release the license plates impounded by the police. In the meantime, he would have to rent another vehicle. The Plaintiff initially declined the offer of a new rental as he had already made arrangements with another company. Eventually, after being assured that he would get a better vehicle—**under the terms of the initial contract**—he conceded, and canceled the second rental vehicle, he initiated with the other company.

38.     The Plaintiff questioned the Merchant about the lack of Talon and insurance in the impounded vehicle and why he was allowed to rent the car with his US DL. He was assured that this is standard practice, as the vehicle insurance can be verified online, and Talons are not required for rental vehicles.

39.     As to his US driver's license, the Merchant told him that they can rent a car even to a client who does not even possess a driver's license.

40.     After facing some rebuttal and disbelief about the car rental process in Bulgaria by the Plaintiff and his family, the Merchant called the local traffic authority ("MVR") and inquired—on a speaker phone—about renting a vehicle without Talon and without having physical paperwork as proof of insurance.

41.     To the Plaintiff's disbelief, the MVR representative concurred with the Merchant and legitimized his claims. More particularly, the MVR rep said over the phone that Talon does not have to be present in the rental vehicle. Further, he said that as long as you can verify that the vehicle is insured online, it can be operated with

expired insurance papers.

42.    Little did Plaintiff know at the time that this was a stage phone call to some Merchant accomplice and part of an elaborate scam.

43.    Prior to taking possession of the replacement rental vehicle, the Plaintiff assured the Merchant that he would not accept the car without Talon and current insurance. He was assured that an exception would be made, and the Talon, along with current insurance papers, would be provided in the glove compartment.

44.    Just 5 minutes after leaving the Merchant's office, the Plaintiff was pulled over by another traffic police officer, who told him he did not have either Talon or current vehicle insurance. For some fortunate reason, he did not get cited again for driving without legalized DL or proof of insurance, and the second vehicle did not get impounded (as the first one).

45.    The next day, feeling premonitions, Plaintiff discovered that his Citi Card was charged an additional 7,056.00 leva (Bulgarian currency, equivalent at this time to $3,734.48). He called the Merchant, who had promised him and—even showed him on his office computer—that the terms of the second vehicle rental were identical to the original car rental contract, and disputed the charge.

46.    He was told that this amount is only a hold and will be released when he releases the license plates of the first vehicle. Plaintiff contended that the two vehicles are unrelated and that the 7,056.00 leva charge is illegitimate.

47.    (The phone call took place on August 13, 2022.)

48.    The next business day, August 15, 2022, Plaintiff drove back to Sofia and

successfully released the license plate to the Merchant's authorized, via POA, representative.

49.    Upon in-depth discussions with the local traffic authorities and Plaintiff's hired local attorney, he was informed that the Merchant's sole responsibility is to request the IDP or legalization of any foreign DL before renting a vehicle. Under Bulgarian law, the Merchant was also responsible for providing the Plaintiff with current car insurance and vehicle documents [Talon].

50.    Inspector Petrov, an MVR official, in the presence of the Merchant's representative, once again restated that it was illegal for them to rent a vehicle without the proper DL legalization. The rental vehicle license plates were successfully released on August 15, 2022, and returned to the Merchant. *See* the inserted picture below; MVR protocol of license plates release.



51.    The Merchant intentionally violated the Bulgarian laws in a well-orchestrated scam by renting a vehicle to Plaintiff without Talon, proper vehicle insurance, and an unlegalized DL, regardless of the fact that even the Merchant's rental agreement explicitly states that no one can rent a vehicle without IDP or a legalized DL.

52.    Consequently, the Merchant voided its own rental agreement.

53.    The agreement reads explicitly that the required documents to pick up the car include a passport, credit card, and a valid driver's license, described as accompanied by an IDP or legalization. *See* the inserted picture below, excerpt from the Merchant's agreement.

- 11 - | Page of Complaint

6:13 · 🔋📶 70% 📶

Maximum rental age is 80 years.
A Senior driver fee is not applied.

The driver license must have been
issued by authorized authorities at
least 1 year(s) before the date of the
commencement of the rental.

The Deposit will double if the renter's
age is from 21 to 24.
Driver licenses will be accepted if
issued in the following country(ies)
United Kingdom, EU.
Driver licenses from all other
countries must be accompanied with
International Driving Permit (IDP).
Please note that the International
Driving Permit is valid only if
accompanied by the regular driver
license.

In order to pick up the car, the
following documents are required:
passport, credit card, valid driver
license.

*Rate your experience*

54.    As a result of the Merchant's wanton, illegal, and unprofessional conduct,

the Plaintiff's family vacation was ruined. He could not us the rented vehicle for travel

and visit the places planned with his family. The limited number of times he drove the

vehicle, fearing an abrupt stop due to engine failure and in fear for his life and the lives

of his wife and daughter due to the vehicle malfunctions and cracked tires. This constant

fear and anxiety overshadowed what was supposed to be a joyous family vacation. *See*

inserted pictures below.[1]

---

[1] Plaintiff is fully aware that Defendant herein bears no responsibility for his ruined family

- 12 - | Page of Complaint



55.    As a result of the Merchant's premeditated scam and rendering of service not as described, the Plaintiff and his family have been charged more than 10,000 leva on the Plaintiff's Citi Card in addition to foreign transaction fees by Citi. These unexpected charges have significantly impacted the Plaintiff's family, caused financial strain and disrupted their vacation plans.

56.    Back in the States, Plaintiff timely disputing the transactions over the phone on August 30, 2022, for a charge on his Citi Card made on August 8, 2022, of $533.28 (for services not as described or agreed upon; not used as intended) and on August 12, 2022, of $3,734.48. (for fraudulent and authorized transactions), with

---

vacation and any emotional distress he might have endured due to the inoperable vehicle. However, Defendant has an obligation under Tila to nullify the charge for services that are not as described and/or agreed upon.

Defendant but was unsuccessful because of the Defendant's illicit and wanton acts of obfuscation aiming to defraud Plaintiff.

57.    At all times relevant to this Complaint Defendant was presented with cornucopia of factual exhibits, police protocols, pictures, rental agreements, in addition to Plaintiff's testimony and failed to properly resolve the disputes, alleging: unauthorized fraudulent transaction, and; good and services not as described.

58.    At all times relevant to this Complaint Defendant failed to resolve or otherwise close the disputes within 90 days. *See* 12 C.F.R. § 1026.13(c)(2).

59.    The disputes stayed open under the Plaintiffs Citi Card account (*See* the inserted screenshots below this paragraph[1]) until he requested the Defendant to close them via a phone call, followed by a certified letter alleging FCBA violations, mailed on August 27, 2024, and received by Defendant on August 30, 2024.  *See Exhibit A*, attached hereto and incorporated herein by this reference.



---

[1] The screenshots are taken from Plaintiff's Citi Card online acct on September 9, 2024.



60.     A prudent litigant will see that disputes are marked as unresolved/pending and give Plaintiff an option to close them.

61.     The last screenshot shows a closed dispute from the same Merchant and the two open disputes litigated herein.

62.     At all times relevant to this Complaint the Defendant deliberately and conspicuously left the disputes unresolved in fragrant and blatant attempt to prevent the Plaintiff from seeking a legal recourse.

63.    At all times relevant to this Complaint Defendant comprised and engaged in various perfidious and illicit act that caused financial burden and emotional distress to Plaintiff.

64.    The Defendant perfidiously concealed the fact that a fraudulent transaction of $3,734.28 was carried out by a <u>Merchant with whom the Plaintiff had no contractual relationship with</u>.

65.    The above-inserted screenshots (P. 14-15) clearly show that AVTOKASHTA IZIRENT SLANCHEV BRYAG BGR charged Plaintiff's Citi Card $3,734.48.

66.    However, the Plaintiff had a rental agreement with EASYRENT BULGARIA, and the two vehicle rental charges[1] came from RENT A CAR BGR. *See* the inserted pictures below.



---

[1] One of the charges represent the entire amount—under a contract—to rent the vehicle, while the second, which should have been a credit card hold, represents the security deposit.

- 16 - | Page of Complaint

67.    As aforementioned, Plaintiff never authorized the $3,734.28 charge and had no information about Avtokashta Izirent Slanchev Bryag BGR—neither then nor now.

68.    Moreover, the Plaintiff did not authorize this charge—as no reasonable person would ever do. As stated above, he was unaware of the charge until the following day, when he checked his Citi Card statement online.

69.    At all times relevant to this Complaint, Defendant resorted to fallacious and surreptitious statements—presented as fact—to deprive Plaintiff of close to $5,000.00 [calculating the foreign transaction fees] of his hard-earned US currency.

70.    Defendant alleged that the $3,734.28 charge from a party unknown to Plaintiff represents a charge for the damaged vehicle during the accident.

71.    This statement fails in fact and in law, as all rental vehicles in Bulgaria must have full coverage insurance—as the Plaintiff did, according to the rental agreement.

72.    The Defendant's statement [in writing] was fallacious and wanton as Defendant was fully aware of that veridical fact, prior to alleging that the $3,734.28 charge was triggered by the accident.

73.    Moreover, Plaintiff's security deposit for said damaged vehicle of $209.13 was returned. [Testament that the care was fully insured.] (Page 15 of Complaint.)

74.    When confronted, the Defendant audaciously claimed in writing that the charge of $3,734.48 was justified because the Plaintiff had kept the second vehicle for six months

- 17 - | Page of Complaint

75.    No court can rectify the Defendant's untenable statement as they had factual and transpicuous information presented to them by the Plaintiff, proving that the vehicle was returned according to the contract on August 24, 2022 and that he flew back to the United States that same day.

76.    Moreover, Defendant—while changing his response every single time— had the temerity to claim [in writing] that a $3,734.28 charge was warranted because Plaintiff fled the scene of the accident[1].

77.    This claim was not just outrageous; it was a calculated, surreptitious fraudulent act, motivated by the Defendant's greed and avarice, to unlawfully take US currency from the Plaintiff.

78.    The Defendant, in a blatant disregard for the Plaintiff's account of the accident, which clearly demonstrated the Plaintiff's unwavering collaboration with the local authorities and the considerable time he and his family had to wait for the officers to arrive at the accident scene, chose to fabricate this mendacious claim.

79.    In other words, the Defendant disregarded the gamut of veracious facts and evidence and called the Plaintiff a fugitive of the police in yet another evil attempt to steal US currency from the Plaintiff.

80.    Defendant's claim that the disputed transaction of $533.28, *under services not as described/promised* as defined in Regulation Z and the Defendant's credit card agreement was provided and used, fell short.

_____

[1] All of the Defendant's statements were made in writing.

- 18 - | Page of Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

81.   Defendant's argument that the services are "provided and used" is untenable and erroneous.

82.   Plaintiff has demonstrated, through photographs and text messages from the rental company representative, that the vehicle is unsafe to operate due to inadequate maintenance and a significant engine failure. The instrument cluster displayed warnings in red: **"engine failure, hazard, pullover."**

83.   Moreover, due to the lack of proper documentation, the vehicle <u>was subject to another impound if used without the documents required by the Bulgarian traffic authorities—effectively rendering it proscribed for road use.</u> *See* the inserted pictures below.



84. Furthermore, the vehicle did not have functioning day-running-lights as required under Bulgarian traffic laws.

85. At all relevant times to this Complaint, Defendant knew or should have known that the Merchant orchestrated a scam by renting a vehicle to Plaintiff without the proper documentation and without a legalized DL or IDP in hope that the vehicle would be repossessed under the Bulgarian laws, that the Merchant purposely ignored to trap unsuspecting tourists.

---

[1] The last picture shows the vehicle insurance expired on 12/26/2021, which renders the vehicle inoperable on public roads.

- 20 - | Page of Complaint

86.    At all relevant times to these disputes, Plaintiff has diligently provided Defendant with a preponderance of evidence regarding the scam. This includes but is not limited to, flight itineraries, police reports, and factual statements refuting the Merchant's baseless claims.

87.    Notwithstanding, Defendant chose the easy path to victory—lie, misrepresent, obfuscate, while holding the Plaintiff liable for charges that otherwise Regulation Z would absolve him from.

88.    Plaintiff's commitment to justice is evident in his efforts to counter Defendant's specious statements such as: "You kept the vehicle for six months,"; "The service was used as promised," "You left the scene of the accident", and; "The charge is because you were involved in an accident."

89.    Furthermore, Plaintiff furnished Defendant with a score of internet Merchant's reviews and complaints depicting the same rinse-and-repeat scam, amongst other frauds.

90.    In the ubiquitous internet reviews, the Merchant is objectified as a scammer, fraudster, bandit, Bulgaria mafia, organized crime, and so forth [1].

91.    Despite the overwhelming amount of factual information, Defendant chose to resort to deceit, withholding or ignoring facts, in Citi's wanton, and perfidious intent to deprive Plaintiff of approximately ≈$5,000.00.

---

[1] https://www.trustpilot.com/review/easyrentbulgaria.bg?stars=1;
https://www.tripadvisor.com/Attraction_Review-g294452-d14204938-Reviews-Easy_Rent_Bulgaria-Sofia_Sofia_Region.html

92.    Defendant's deceitful behavior has compounded the Plaintiff's frustration and disappointment and placed a significant financial burden on him.

93.    As stated at the very beginning of this Complaint, since the "Defendant has no way to recover their funds" from a scammer, they became the scammer themselves by using a color of law, deceit, spurious representation, and evil mind to keep the American consumer on the hook for Citi's alleged losses.

## VI
## FIRST CAUSE OF ACTION
## VIOLATION OF THE ARIZONA REVISED STATUTES TITLE 44, TRADE AND COMMERCE § 44-7803

94.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

95.    At all times relevant to this action, Arizona Revised Statutes Title 44, Trade and Commerce § 44-7803, have been in full force and effect and have applied to Defendant's conduct.

96.    Under Arizona law, the Plaintiff is not liable for charges he did not incur or benefit from.

97.    Defendant violated the statute by requiring Plaintiff to make Citi whole for the litigated herein disputes.

98.    Plaintiff is, therefore, entitled to an award of attorney's fees[1], costs, and disbursements pursuant to the A.R.S and/or common law.

---

[1] When/If an attorney is introduced to this action or under the private attorney general doctrine.

- 22 - | Page of Complaint

## VII
## SECOND CAUSE OF ACTION
### VIOLATION OF THE FEDERAL CREDIT BILLIG ACT

99.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

100.    At all times relevant to this action, the Fair Credit Billing Act, 15 U.S.C. §1666, has been in full force and effect and has applied to the Defendant's conduct.

101.    Plaintiff timely disputed the litigated herein charges on his Citi Card under 15 U.S. Code § 1666(a) and unattached incontrovertible evidence that said transactions fall in the categories of goods not as described (15 U.S. Code § 1666(b)(3)) and other billing errors (15 U.S. Code § 1666(b)(7)).

102.    Defendant failed to investigate the claims within the 90 days mandated by 15 U.S. Code § 1666(a)(3)(B) and kept the above-referenced disputed claims pending and open until September 9, 2024, or a later date.

103.    Defendant did not comply with 15 U.S. Code § 1666(c) and has collected the disputed amounts from the Claimant [obligor], along with the accrued foreign transaction fees, while the disputed transactions show unresolved status under Claimant Citi accounts, relevant credit reporting bureau(s). More particularly, both disputes read: *We're Reviewing Details from the Merchant. We received a response from the merchant about this dispute and will get back to you after we complete our investigation. Remember to hold onto all supporting documentation for 90 days from the date your dispute was opened. **The merchant has responded. We'll update you once the investigation closes.***

- 23 - | Page of Complaint

104.    Plaintiff is, therefore, entitled to an award of attorneys' fees, costs, and disbursements pursuant to the FCBA and/or common law.

## VIII
## THIRD CAUSE OF ACTION
## VIOLATION OF THE TRUTH IN LENDING ACT

105.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

106.    At all times relevant to this action, TILA, 15 U.S.C. § 1601 et seq., and its implementing Regulation Z, 12 C.F.R. pt. 1026, have been in full force and effect and have applied to Defendant's conduct.

107.    TILA establishes the fundamental rights, liabilities, and responsibilities of consumers who use credit cards and financial institutions or other persons who offer or service credit cards.

108.    TILA defines a "creditor" as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

109.    Defendant herein is a "creditor" as defined under TILA.

110.    Under TILA, "creditors" are liable for their failure to comply with their obligations surrounding billing error notices and unauthorized use claims, for failing to

- 24 - | Page of Complaint

timely resolve the disputes litigated herein, and for their erroneous determination in favor of a rogue Merchant.

111.    Plaintiff is, therefore, entitled to an award of attorneys' fees, costs, and disbursements pursuant to TILA and/or common law.

## IX
## FOURTH CAUSE OF ACTION
## INFLICTION OF EMOTIONAL DISTRESS

112.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

113.    The Plaintiff has suffered physical and emotional distress during the erroneously lengthy process of dispute that left him in limbo—not being able to seek legal recourse—prior to the final [recent] closure of the disputes.

114.    Defendant's actions were recklessly indifferent to Plaintiff's federally protected rights; therefore, he is entitled to be made whole for all financial losses and/or any other federal and state law provision.

115.    Plaintiff is entitled to compensatory, punitive, and exemplary damages for undergoing mental and physical distress for the direct and proximate injuries caused by Defendant.

116.    Plaintiffs prays for judgment as set forth below, as afforded under State, Federal, and tortious laws.

## X
## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

117.    Plaintiff reaffirms and realleges the general factual claims above by this

reference.

118.    Plaintiff and Defendant entered a valid and enforceable contract when Defendant approved Plaintiff's Citi Card application.

119.    Defendant wantonly and perfidiously breached the contract by violating its own dispute resolution guidelines, a clear act of misconduct that cannot be tolerated.

120.    The Defendant breached the contract by ruling fallaciously in favor of the rogue Merchant in wanton, disregarding the facts and the events surrounding the disputes.

121.    The Defendant breached the contract when violated Citi's $0 Liability On Unauthorized Charges Clause.

122.    Plaintiff prays for judgment as set forth below, as afforded under State, Federal, and common law.

## XI
## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

123.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

124.    Every contract in Arizona contains an implied covenant of good faith and fair dealing, which prevents a party from taking action to unfairly interfere with another party's right to receive the benefits of the contract.

125.    Plaintiff and Defendant entered a valid, enforceable contract upon approval of his Citi Card application.

126.    The Plaintiff diligently adhered to and fulfilled all his obligations under

the contract, including but not limited to servicing his Citi Card and timely alerting Defendant about fraud and services, not as described charges.

127.   Defendant wantonly and perniciously interfered with Plaintiff's right to receive the benefits of the contract by not performing according to Citi's contract (*See* ¶ 14, Your Billing Rights, of Citi's contract. *Exhibit B*, attached hereto and incorporated herein by this reference) and by using a mendacious, fallacious, and perfidious approach during the dispute process, depriving Plaintiff of close to $5,000.00 in US currencies.

128.   The Defendant's breach of contract came on the hills as a direct result of Citi's actions and omissions.

129.   Plaintiff prays for judgment as set forth below, as afforded under State, Federal, and common law.

## XII
## SEVENTH CAUSE OF ACTION
### FRAUD

130.   Plaintiff reaffirms and realleges the general factual claims above by this reference.

131.   "Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' " *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054–55 (9th Cir. 2011) (quoting Fed. R. Civ. P. 9(b)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false.' " *Id*. at 1055 (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir.

2010)).

132.   The Complaint at hand represents an array of misinformation and perfidious acts the Defendant committed [prior to the commencement of this action] not comporting with the irrefrangible facts Citi had in their quiver prior to wantonly committing fraud.

133.   At all times relevant to this Complaint the Defendant acted perniciously and with an evil mind aiming to purport that the Merchant is not liable for the services that were clearly not rendered as promised and for the unauthorized charge of $3,734.28.

134.   As stated at the very beginning of this Complaint, since the *"Defendant has no way to recover their funds" from a scammer, they became the scammer themselves by using a color of law, deceit, spurious representation, and evil mind to keep the American consumer on the hook for their alleged losses. (P 22, ¶ 22.)*

135.   During the timely and lawful dispute process, the Plaintiff furnished the Defendant with irrefragable documents, such as flight itineraries, police reports, a car rental agreement, and so forth.

136.   The fact that the first rental vehicle was comprehensively insured is irrefutable.

137.   The fact that Plaintiff did not flee the scene of the accident is irrefutable.

138.   The fact the Plaintiff did not keep the vehicle for six months is irrefutable

139.   Defendant was in possession of DOCUMENTS  establishing the irrefutability of the above-declared facts—furnished by Plaintiff—prior to resorting to untenable, perfidious and malicious statement aiming at one and only objective

collecting [constructive theft] US currency from a consumer Defendant is not otherwise entitled to, because **"we have no way of recovering these funds"** from the Merchant; as stated on a recorded phone call from by City executive representative Mr. Campbell on September 30, 2024. (See P. 3, ¶ 8 above.)

140.    On or about October 14, 2022, Plaintiff received an email communication from Defendant alleging that the charge of $3734.48 is warranted because "you kept the vehicle for six months".

141.    On or about February 6, 2023 Plaintiff received an email communication from Defendant alleging that he fled the scene of the accident:

> *"We have reviewed your dispute with AVTOKASHTA IZIRENT SLANCHEV BRYA BGR, in the amount of $3,734.48, and determined we are unable to assist you. The rental agreement provided by the merchant is signed, indicating that the estimated charges were accepted by you. The merchant's terms and conditions state that "In case of an accident, traffic accident, or administrative violation, regardless of its nature and the fault for its occurrence, <u>the customer is obliged to notify EasyRent and stay on the scene, waiting for the law enforcement</u>"*

142.    When Defendant sent this correspondence, Citi was well apprised that Plaintiff stayed on the scene of the accident and cooperated with the local authorities.

143.    Moreover, *AVTOKASHTA IZIRENT SLANCHEV BRYA BGR was an unknown entity to the Plaintiff* then and now, and he never had any contractual obligations with them.

144.    On or about March 20, 2023, Plaintiff received an email communication from Defendant alleging that the services were used as described, although Citi was will apprised that said vehicle was used or only about 5 miles prior to an accident:

> *"[t]he full amount of the transaction of $533.28 from RENT A CAR Sofia BGR, cannot be disputed <u>since the services were provided and used</u>."*

145.    Under the rental agreement, Citi was in possession of, the services were going to be used if the vehicle was <u>used for 12 (twelve) days not 15 minutes</u>.

146.    On or about September 30, 2020, Plaintiff received an email communication from Defendant alleging that he agreed to the terms of *AVTOKASHTA IZIRENT SLANCHEV BRYA BGR*, an entity with which he never entered into any agreement.

> *"[you] had agreed to the terms and conditions of the rental agreement when you rented a car from AVTOKASHTA IZIRENT SLANCHEV BRYA BGR. Therefore, we must decline your request for a credit for the $3,734.48 charge <u>due to damage to the rented vehicle</u>."*

147.    Moreover, Defendant alleges that *the $3,734.48 charge [is] due to damage to the rented vehicle.* The Complaint and the unambiguous facts clearly established that the vehicle Defendant refers to was never involved in any accident or suffered any damages.

148.    Further the vehicle is prohibited from public use under Bulgarian traffic laws due to a major engine malfunction. *(See P. 19, ¶ 83.)*

149.    Plaintiff unequivocally established through this Complaint that Defendant's specious statements such as: "You kept the vehicle for six months,"; "The service was used as promised," "You left the scene of the accident", and; "The charge is because you were involved in an accident" were made with malice and evil mind, as Defendant was fully aware—based on the evidence Citi had under their disposal—that said statements were mendacious.

- 30 - | Page of Complaint

150.    Plaintiff's tautological veracious claims, sprawling in the Complaint at hand, are for no other reason but to buttress his importunity and tenacity extended to Defendant—prior to invoking this court jurisdiction—in a good faith attempt to reach an amicable resolution to the litigated herein disputes. Good faith and facts that Citi ignored and chose the path of deceit—in other words, theft by surreptitious and perfidious act with the sole objective of defrauding Plaintiff of his ≈$5,000.00.

151.    Plaintiff prays for judgment as set forth below, as afforded under State, Federal, and common law.

152.    Plaintiff prays for punitive damage as set forth below, as afforded under State, Federal, and common law

## XIII
## CONCLUSION

153.    In the name of judicial efficiency, Plaintiff herein, in a proactive measure prior to commencing this action, sent documents—via certified mail—to Defendant titled Notice of Claim and Notice to Sue and Notice of Default and Opportunity to Cure.

154.    Despite this proactive approach, Defendant failed to respond prior to commencing this action.

155.    In the aforementioned documents, Plaintiff put hereby Defendant on notice that he will pursue legal action under the FCBA in a court with competent jurisdiction.

156.    Therefore, the Plaintiff invokes this court's jurisdiction as the action is ripe for prosecution.

157.    Further, the Plaintiff asks this honorable court to scrutinize the complaint and *sua sponte* grant any other relief not yet sought and/or not properly plead based on the facts stated therein.

158.    Moreover, A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, ... a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curium).

## XIV
## PRAY FOR RELIEF

1.    **WHEREFORE**, Plaintiff prays this Court will enter judgment against Defendant and Unknown Defendants, and each of them, as follows:

    a. Declare Defendant's conduct complaint off herein in violation of the FCBA;

    b. Declare Defendant's conduct complaint off herein in violation of TILA, Regulation Z;

    c. Declare Defendant's conduct complaint off herein in violation of Breach of Contract and Implied Covenant;

d.  Declare Defendant's conduct complaint off herein in liable for committing fraud;

e.  Declare Defendant's conduct complaint off herein in breach of statutory and common law contractual doctrines and laws;

f.  Award Plaintiff actual and compensatory damages, to be determined by the Jury at the time of trial;

g.  Award Plaintiff punitive damages, to be determined by the Jury at the time of trial;

h.  For costs of suit incurred herein;

i.  For prejudgment and post-judgment interest as available by law; and

j.  For such other and further relief as is just, proper and equitable.

## XV
## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial each cause of action so triable.

**RESPECTFULLY SUBMITTED** this 27th day of October, 2024

By, _____
**Ivaylo Dodev**, *Pro Se* **Plaintiff**
**c/o 38153 West Nina Street**
**Maricopa, Arizona 85138**
**(480) 457-8888 Phone**
**(480) 457-8887 Facsimile**

- 33 - | Page of Complaint

1
2

**<u>VERIFICATION</u>**

3
4

The undersigned attests and declares that he is the Plaintiff in the foregoing

5

document entitled **COMPLAINT.**

6

He has drafted and knows the contents thereof and certifies that the matters stated

7

therein are facts of his own knowledge, except as to those matters, which are therein

8
9

stated upon his information or belief, and as to those matters, he firmly believes them

10

to be correct.

11

Plaintiff declares under the penalty of perjury of the Laws of Arizona that the

12
13

foregoing is correct and complete to the best of his knowledge, information, and belief

14

and that this verification is executed in Pinal County, Arizona, and is dated this 27th

15

day of October, 2024.

16
17
18

By, _____

19

**Ivaylo Dodev**, *Pro Se* Plaintiff
**c/o 38153 West Nina Street**

20

**Maricopa, Arizona 85138**
**(480) 457-8888 Phone**

21

**(480) 457-8887 Facsimile**

22
23
24
25
26
27
28

- 34 - | Page of Complaint

Exhibit A

USPS certified mail: 9589071052700408447169

Ivaylo Dodev
38153 W Nina St
Maricopa, AZ 85138
(480) 457-8888 Ph.
(480) 457-8887 Fax

# <u>LEGAL NOTICE UNDER 15 U.S. Code § 1666</u>

**TO:  Citibank, N.A.**
**P.O. Box 6013**
**Sioux Falls, SD 57117**

**RE:  Citi Cash Card:**
<u>**Open credit card disputes, with case ID'S D-673577300822, and D-672932300822** under</u>
**Ivaylo Dodev's City Custom Cash-Mastercard, a holder in good standing, ending in 3602,**
**valid thru 08/26.**

You are hereby in receipt of a Legal Notice (the "Notice") under 15 U.S. Code § 1666 ("FCBA") regarding the above-referenced matters sent by Ivaylo Dodev (the "Claimant") against Citibank NA and their employees, subsidiaries, and attorneys, (the "Bank").  The Notice will be entered as evidence against the Bank in a court of competent jurisdiction when a lawful action is brought against the Bank if the sought hereinafter good faith resolution is not reached.

## ALLEGED VIOLATIONS UNDER FCBA

-    Claimant timely disputed the above reference transactions under 15 U.S. Code § 1666(a) and unattached incontrovertible evidence that said transactions fall in the categories of goods not as described (15 U.S. Code § 1666(b)(3)) and other billing errors (15 U.S. Code § 1666(b)(7)).

-    The Bank failed to investigate the claims within the 90-day period mandated by 15 U.S. Code § 1666(a)(3)(B) and still (as of 08/27/2024) keeps the above-reference disputed claims pending and open.

-    The Bank did not comply with 15 U.S. Code § 1666(c) and has collected the disputed amounts from the Claimant [obligor], along with the accrued foreign transaction fees, while the disputed transactions show unresolved status under Claimant Citi accounts. More particularly, both disputes read: *We're Reviewing Details from the Merchant. We received a response from the merchant about this dispute and will get back to you after we complete our investigation. Remember to hold onto all supporting documentation for 90 days from the date your dispute was opened. The merchant has responded. We'll update you once the investigation closes.*

- By not complying with the FCBA the Bank caused Claimant emotional and financial distress and hindered timely legal recourse as the disputed claims are still pending.

## PERTINENT FACTS ABOUT THE DISPUTED TRANSACTIONS

The Claimant is in possession of documents, whereas the Bank erroneously, without providing any evidence, claimed that the Claimant had caused an accident and left the scene without waiting for law enforcement to arrive, warranting the $3734.48 charge. In addition, the Bank claimed that the rent-a-car merchant AVTOKASHTA IZIRENT SLANCHEV BRYAG BGR, could not use the vehicle for their commercial activities due to the accident. Moreover, the Bank claimed that the $533.28 the Claimant paid for the eleven-day car rental could not be disputed because the service was provided and used. Yet, another erroneous statement by the Bank was that the said vehicle was used only for 30 minutes. All those unfounded claims made by the Bank lead a reasonable person to conclude that the Bank colluded with the rouge merchant in an attempt to defraud the Claimant under color of law.

To simplify the absurdity of the Bank's false claims for the clarity of the judge, the Claimant once again states and deposes the following:

- The entire rental agreement with the merchant was for $533.28 [for an eleven-day rental];

- For some reason, the merchant is using two different names to justify the bogus charges;

- A few miles from the airport, the vehicle was rear-ended;

- The vehicle was fully insured, as the Claimant chose and paid for the additional insurance, part of the $533.28 charges (all rental vehicles MUT be full insured under Bulgaria law);

- After spending about six hours at the intersection, waiting for the traffic authorities to arrive and draft their reports, the Claimant was given a ride back to the merchant's office;

- At the office, he was promised a replacement vehicle under the same terms - $533.28;

- The Claimant was reluctant to accept because the original vehicle lacked the proper documentation, as required by the Bulgarian traffic authorities.

- The merchant has rented the vehicle without registration and current insurance to the Claimant, which led to the removal of the license plates by the Bulgarian traffic authorities for said vehicle.

- Back to the Merchant office. In the office Claimant was promised a better vehicle with the proper/legal documentation under the term of the original contract - $533.28;

- For the record, the replacement vehicle—once again—did not have current insurance and registration. The Claimant was told by the merchant that the documents were locked in another office;

-    At the merchant office, the Claimant was told that the releasing of the license plates from the Bulgarian traffic authorities of the vehicle involved in the minor accident is somehow his responsibility, and if not released prior to his return to the United States, the Claimant will be charged for six months' loss of use. This is where the $3734.48 charge comes into play. The Claimant never stipulated to said charge, as no reasonable person would ever do;

-    The same day, the Claimant hired a local attorney and released the vehicle license plates to the merchant on the next business day, and;

-    These factual statements are supported by pictures and documents issued by the Bulgaria Interior Ministry and already submitted to the Bank.

Moreover, the Claimant alleges that the Bank possesses all documents supporting the Claimant's factual statement—made herein—and has reviewed or should have reviewed them and resolved the disputes in his favor.

Any additional specious statement by the Bank contradicting the irrefragable chain of events regarding the disputes, as detailed in the Notice to Sue, without the support by a material factual witness affidavit or material document shall be construed as a malicious attempt—by the Bank—to divest Claimant of the disputed amount of US currency through false and inveigle representation. Any further regurgitation by the Bank, of spurious statements as "he kept the car for six months"; "there was an accident" [there never was an accident with the vehicle Claimant was charged $3734.48 for]; "he did not stay on the scene of the accident," or; any other claim juxtaposition to Claimant's veracious chain of events, as stated herein above, without the support of affidavit or document, as request herein, shall be treated as acquest by the Bank to fraud on the record and shall be punishable by any court of competent jurisdiction.

## OFFER IN LIEU OF LAWFUL LEGAL ACTION

The Claimant has a good relationship with the Bank and has always been on time on his obligations under the terms of the Citi Cash Card. This Notice shall not be treated as anything else but a good faith approach to solve the matter at hand amicably and save both parties the cost of litigation. The claimant will waive his right to sue if the Bank resolves the disputes in his favor, based on the evidence—already submitted—that the merchant acted perniciously by attempting to steal a significant amount of US currency from the Claimant. Adversely, timely action will commence against the Bank in a court of competent jurisdiction.

**TIME IS OF THE ESSENCE. PLEASE RESPOND IN WRITING UNDER FCBA AND PLACE YOUR WET SIGNATURE.**

Dated: **August 27, 2024**                    Respectfully,

By: _Ivaylo Dodev_

Ivaylo Dodev

Page 3 of 3

**Track Packages**
**Anytime, Anywhere**

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**
(https://reg.usps.com/xsell?
app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

**Remove ✕**

**Tracking Number:**

**9589071052700408447169**

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

**Latest Update**

Your item was picked up at a postal facility at 11:30 pm on August 30,
2024 in SIOUX FALLS, SD 57117.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®



● **Delivered**
**Delivered, Individual Picked Up at Postal Facility**
SIOUX FALLS, SD 57117
August 30, 2024, 11:30 pm

● **Arrived at USPS Regional Destination Facility**
SIOUX FALLS SD DISTRIBUTION CENTER
August 30, 2024, 10:47 am

● **In Transit to Next Facility**
August 29, 2024

● **Arrived at USPS Regional Origin Facility**
PHOENIX AZ DISTRIBUTION CENTER
August 28, 2024, 8:30 pm

● **USPS in possession of item**
MARICOPA, AZ 85138
August 27, 2024, 3:11 pm

● **Hide Tracking History**

**What Do USPS Tracking Statuses Mean?**
(https://faq.usps.com/s/article/Where-is-my-
package)

**Text & Email Updates**                                    ⌄

**USPS Tracking Plus®**                                     ⌄

**Product Information**                                     ⌃

**Postal Product:**                              **Features:**
First-Class Mail®                                Certified Mail™

**See Less** ⌃

Track Another Package

Exhibit B

# YOUR BILLING RIGHTS

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act. Keep this document for future use.**

## What to Do if You Find a Mistake on Your Statement

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

## What Will Happen After We Receive Your Letter

When we receive your letter, we must do 2 things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

## While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The transaction in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## After we finish our investigation, one of two things will happen:

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

## Your Rights if You're Dissatisfied with Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

## To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50.
   (**Note:** Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with an Account check do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

---

*For Further Information:* Call the Customer Service number shown on the statement or on the back of your Card if you need more information.
*For TTY: Use 711 or other Relay Service.*

---

