**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaylo Dodev, | No. CV-24-02931-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| CitiBank NA, et al., | |
| Defendants. | |

Pending before the Court are Defendant Citibank, N.A.'s ("Citibank") motion to compel arbitration, (Doc. 14), and Plaintiff Ivaylo Dodev's motion for leave to file a sur-reply in opposition to Citibank's motion to compel arbitration, (Doc. 23). For the reasons explained below, Citibank's motion is granted and Dodev's motion is denied.[1]

## I.    FACTUAL BACKGROUND

Dodev has a Citi Custom Cash credit card (the "Citi Card") with Citibank, which was issued "on or about July 5, 2022." (Doc. 1 ¶¶ 2–3; Doc. 14-1 at 2.)[2]

During a "vacation in Bulgaria," Dodev's Citi Card was "charged twice while procuring a rental vehicle" from EasyRent Bulgaria. (Doc. 1 ¶¶ 5, 32.) Dodev was "sideswiped by the vehicle driving behind him," which "only scuffed" the rental car, but

---

[1]    The parties did not request oral argument, so the Court decides these motions without holding a hearing. *See* LRCiv 7.2(f).

[2]    Evidence submitted by the parties in connection with a motion to compel arbitration may be considered. *See, e.g.*, *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1336 (C.D. Cal. 2017) ("A court may consider evidence outside of the pleadings, such as declarations and other documents filed with the court, using a standard similar to the summary judgment standard." (citation modified)).

police "cited [Dodev] for not having his [United States driver's license] legalized or having an International Driving Permit." (*Id.* ¶¶ 34–35.) The police also removed the license plates from the vehicle and towed the car back to EasyRent's office because the "rental vehicle did not have a proper document of ownership . . . and insurance, as required under Bulgarian traffic laws, prior to renting it to a client." (*Id.* ¶ 35 (emphasis omitted).)

EasyRent "assured [Dodev] he would get a better vehicle" "under the terms of the initial contract." (*Id.* ¶ 37 (emphasis omitted).) EasyRent then proceeded to "stage [a] phone call to [an] accomplice" posing as the traffic authority to mislead Dodev into believing that physical proof of insurance was not required for rental vehicles. (*Id.* ¶¶ 40–42.)

Thereafter, Dodev "discovered that his Citi Card was charged an additional 7,056.00 leva (Bulgarian currency, equivalent at this time to $3,734.48)." (*Id.* ¶ 45.) When he called EasyRent, it "promised him," "even showed him on [EasyRent's] office computer," that "the terms of the second vehicle rental were identical to the original car rental contract," and stated that the additional charge was a "hold" that would be released. (*Id.* ¶¶ 45–46 (emphasis omitted).) The charge was not rescinded. (*See id.* ¶¶ 55–56.)

Dodev disputed the charges on his card, and after he received the "first periodic statement reflecting the alleged billing errors," he "sent a written certified communication" to Citibank. (*Id.* ¶¶ 24, 56.) Citibank "failed to respond in writing to [the] certified communication." (*Id.* ¶ 27.)

On September 30, 2024, Dodev "contacted the Citi[bank] executive office and spoke to" a representative of Citibank, who stated that "Citibank's choice to side with EasyRent was now final because Citibank had no way of recovering the funds." (*Id.* ¶¶ 7–8 (citation modified).) Citibank "alleged that the $3,734.28 charge" represented "a charge for the damaged vehicle during the accident" and, later, that Dodev "had kept the second vehicle for six months." (*Id.* ¶¶ 70, 74.) Dodev alleges he "diligently provided [Citibank] with a preponderance of evidence regarding the scam," including "flight itineraries, police reports, and factual statements refuting [EasyRent's] baseless claims," as well as "a score

1    of internet . . . reviews and complaints depicting the same . . . scam" by EasyRent.  (*Id.*
2    ¶¶ 86, 89.)

3        On October 21, 2024, Citibank "closed the dispute" at Dodev's request.  (*Id.* ¶¶ 12,
4    59.)

5        Dodev alleges Citibank "deliberately and conspicuously left the disputes
6    unresolved" to "prevent [him] from seeking a legal recourse."  (*Id.* ¶ 62.)  He asserts
7    statutory claims under Ariz. Rev. Stat. § 44-7803, the Federal Credit Billing Act, and the
8    Truth in Lending Act, and common law claims for infliction of emotional distress, breach
9    of contract, breach of the implied covenant of good faith and fair dealing, and fraud.  (*Id.*
10   at 22–31.)

11       **II.    PROCEDURAL HISTORY**

12       On October 28, 2024, Dodev filed the Complaint.  (Doc. 1.)

13       On December 18, 2024, Citibank moved to compel arbitration.  (Doc. 14.)  On
14   January 2, 2025, Dodev filed a response, (Doc. 16), and on January 9, 2025, Citibank filed
15   a reply, (Doc. 19).

16       On April 22, 2025, months after the parties fully briefed the motion to compel
17   arbitration, Dodev moved for leave to file a sur-reply.  (Doc. 23.)  On May 1, 2025,
18   Citibank filed a response.  (Doc. 24.)  Dodev did not file a reply, and the time to do so has
19   now expired.  *See* LRCiv 7.2(d).

20       **III.    MOTION TO COMPEL ARBITRATION**

21           **A.    Legal Standard**

22       The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction
23   involving commerce."  9 U.S.C. § 2.  It provides that written agreements to arbitrate
24   disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at
25   law or in equity for the revocation of any contract."  *Id.*  Thus, absent a valid contractual
26   defense, the FAA "leaves no place for the exercise of discretion by a district court, but
27   instead mandates that district courts shall direct the parties to proceed to arbitration on
28   issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc.*

*v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis omitted).

In general, a court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). These two issues are sometimes referred to as the "gateway" questions of arbitrability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Although the gateway questions are ordinarily resolved by the court, parties may agree to arbitrate one or both of the gateway issues by including a delegation clause in the arbitration agreement: "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. The evidence of the parties' intent to delegate such issues to the arbitrator must be "clear and unmistakable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

### B.    The Arbitration Agreement

Dodev's use of his Citibank Card is subject to a Card Agreement, which Citibank provided to Dodev, "along with the physical credit card, to his address on file when he opened the Account." (Doc. 14-1 at 2.) "Federal law and the law of South Dakota" govern the Card Agreement. (*Id.* at 21.) The Card Agreement contains an arbitration clause with the following language:

**Covered Claims**

•    **You or we may arbitrate** any claim, dispute, or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").

•    **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise;

> Claims made regarding past, present, or future conduct; and Claims made independently or with other claims.  This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(*Id.* at 20.)  The Card Agreement provides for arbitration to be "conducted by the American Arbitration Association ('AAA') according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ('AAA Rules'), except where those rules conflict with this arbitration provision."  (*Id.*)

The Card Agreement also contains an opt-out provision, stating in relevant part:

> You may reject this arbitration provision by sending a written rejection notice to us . . . .  Your rejection notice must be mailed within 45 days of Account opening.  Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature.  No one else may sign the rejection notice.

(*Id.* at 21.)  Citibank does not have any record that Dodev opted out of the arbitration provision, which it would have saved to Dodev's file if it had received an opt-out notification.  (*Id.* at 3–4; Doc. 19-2 at 2.)

## C.    Discussion

Citibank argues Dodev's claims are subject to arbitration, requiring its motion to be granted.  (Doc. 14 at 4–5, 7–8.)  Citibank also argues that, under South Dakota law, a valid agreement to arbitrate exists because "the Account was opened in [Dodev's] name, [Dodev] received the Card Agreement (containing the Arbitration Agreement), did not reject or opt out of the Arbitration Agreement, and continued to use and pay for the Account . . . after its receipt."  (*Id.* at 6–7.)  Finally, Citibank requests that this action be stayed pending completion of arbitration.  (*Id.* at 8–9.)

Dodev argues that he opted out of the arbitration provision, stating that he "found a draft of the Agreement's rejection in his computer that was sent via USPS first class mail on or about August 1, 2022."  (Doc. 16 at 4.)  Furthermore, Dodev argues that resolution

1    of this issue—whether he opted out of the arbitration provision—is a factual dispute that
2    requires a jury trial. (*Id.* at 5.) Dodev also argues that, even if he did not opt out, the Card
3    Agreement is not binding under Arizona law because the arbitration provision uses the
4    permissive term "may" rather than the binding term "shall" or "must." (*Id.* at 8–9.) Dodev
5    contends Citibank waived its right of arbitration "by choosing litigation," stating that a
6    "high-level Citibank, N.A. executive" told him during a "recorded phone call" that Dodev
7    could pursue "a litigation." (*Id.* at 10 (emphasis omitted).) Finally, Dodev argues the
8    arbitration agreement is unconscionable. (*Id.* at 11–13.)

9         In reply, Citibank argues that the arbitration agreement has delegated arbitrability
10   to the arbitrator, through the incorporation of the AAA rules that provide for the arbitrator's
11   power to rule on issues of jurisdiction, the scope and validity of the arbitration agreement,
12   and arbitrability of any claims. (Doc. 19 at 2–3.) Citibank argues that the arbitrator must
13   therefore decide "whether there is a valid agreement to arbitrate between the parties as well
14   as . . . [Dodev's] argument that he rejected the arbitration provision." (*Id.* at 3.) Citibank
15   further contends there is no genuine dispute of material fact that Dodev failed to opt out of
16   the arbitration provision, because Dodev "does not offer admissible evidence that he
17   rejected arbitration," such as an "affidavit declaring under penalty of perjury that the letter
18   was actually sent on the date he alleges." (*Id.* at 5–6.) Finally, Citibank disputes that it
19   waived its right to compel arbitration and argues that Dodev did not meet his burden of
20   showing unconscionability. (*Id.* at 8–10.)

21        Dodev does not dispute that he and Citibank generally formed a contract through
22   the Card Agreement. (*See* Doc. 16 at 8–13 (arguing the *agreement to arbitrate* is not
23   binding and unconscionable); Doc. 1 ¶ 118 (alleging in claim for breach of contract that he
24   and Citibank "entered a valid and enforceable agreement when [Citibank] approved [his]
25   Citi Card application").) *See, e.g.*, *Estep v. Yuen Yung*, 2015 WL 1062995, at *2 (E.D. Cal.
26   2015) ("Plaintiffs cannot sue for breach of contract and then, in an effort to avoid a
27   contractual provision, argue that they are not parties to the contract.").

28        As mentioned, the "gateway issues" of arbitrability can "be expressly delegated to

1   the arbitrator where the parties clearly and unmistakably" do so.  *Brennan*, 796 F.3d at

2   1130 (citation modified).   Incorporation of the AAA's rules "constitutes clear and

3   unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Id.*

4   (citation omitted).  If an arbitration agreement "clearly and unmistakably delegates

5   arbitrability questions to the arbitrator, the only remaining question is whether the

6   particular agreement *to delegate* arbitrability . . . is itself unconscionable."  *Id.* at 1132.

7   General challenges of unconscionability—to either the contract or the arbitration provision

8   as a whole—are insufficient to "have the federal court address [the] unconscionability

9   challenge."  *See id.* at 1133.

10      Citibank is correct that the arbitration agreement expressly delegates the gateway

11  issue of arbitrability to the arbitrator.  The arbitration agreement provides that "arbitration

12  shall be conducted by the [AAA] according to this arbitration provision and the applicable

13  AAA arbitration rules in effect when the claim is filed."  (Doc. 14-1 at 20.)  This is like the

14  delegation provision enforced by the Ninth Circuit in *Brennan*, which provided that claims

15  would "be settled by binding arbitration in accordance with the Rules of the American

16  Arbitration Association."  796 F.3d at 1128.  The AAA Consumer Rules[3] provide that the

17  "arbitrator shall have the power to rule on their own jurisdiction, including any objections

18  with respect to the existence, scope, or validity of the arbitration agreement or the

19  arbitrability of any claim or counterclaim," which clearly and unmistakably evidences the

20  parties' agreement to arbitrate arbitrability.  Am. Arb. Ass'n, *AAA Consumer Arbitration*

21  *Rules    and    Mediation    Procedures*   11   (May   1,   2025),

22  https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf

23  [https://perma.cc/DN4S-PP6B]; *see also Brennan*, 796 F.3d at 1130 (containing similar

24  rule).   Courts have held that similar delegation provisions clearly and unmistakably

25  _____

26  [3]     The AAA Consumer Rules were amended in May 2025.  *See* Am. Arb. Ass'n, *AAA Consumer Arbitration Rules and Mediation Procedures* (May 1, 2025), https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf

27  [https://perma.cc/DN4S-PP6B].  Although Citibank included with its briefing a copy of the previous AAA Consumer Rules, (Doc. 19-1), it is unnecessary to decide which Rules are

28  in effect because the relevant rule pertaining to the arbitrator's jurisdiction is substantively identical.

delegated arbitrability and required the arbitrator to decide the gateway issues. *See, e.g.*, *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 971–74 & 971 n.1 (N.D. Cal. 2015) (delegation provision providing that "arbitration will be commenced and conducted under the Commercial Arbitration Rules . . . of the American Arbitration Association" required "questions regarding the arbitration provision's validity, scope, or application to [the] dispute [to] be decided by the arbitrator").

But whether an agreement to arbitrate even exists, which Dodev disputes on grounds that he opted out of the arbitration agreement, is not an issue properly delegated to the arbitrator because it pertains to contract formation, rather than validity. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (stating that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *see also Rent-A-Center*, 561 U.S. at 70 n.2 ("The issue of the agreement's validity is different from the issue [of] whether any agreement between the parties was ever concluded . . . ." (quotation marks omitted)).  If Dodev opted out of the arbitration agreement, he has not agreed to submit *any* dispute to arbitration, let alone questions of arbitrability. *See AppTech Payments Corp. v. NCR Payment Sols., LLC*, 2023 WL 7413355, at *4 (S.D. Cal. 2023) ("If Plaintiff had indeed opted out, there would be no arbitration agreement.").

Other courts have similarly concluded that, if one party disputes whether they opted out of the arbitration provision entirely, a court must resolve this issue before compelling arbitration, even if the arbitration agreement contains a delegation provision. *See Rolen v. Va. CVS Pharmacy, LLC*, 2025 WL 757593, at *3–4 (W.D. Va. 2025) (holding that the court must decide the issue of whether the plaintiff opted out of the arbitration agreement because a delegation provision "does not preclude a court from deciding that a party never made an agreement to arbitrate *any* issue" (citation omitted)); *Deverze v. Uber Techs., Inc.*, 2020 WL 10111001, at *2, 4 (N.D. Ga. 2020) (holding the "determination of whether an arbitration agreement exists falls under the purview of [the] court," even with a delegation provision, where the plaintiff "contend[ed] that he sent timely written notification of his

decision to opt-out of the arbitration provision"); *Mendez v. LoanMe, Inc.*, 2020 WL 6044098, at *2–4 (S.D. Cal. 2020) (holding that the court must resolve the issue of whether the plaintiff opted out of the arbitration provision, even where a delegation provision was present, because "[w]hether or not Plaintiff assented to the Arbitration Provision— including the delegation clause—is wholly contingent on whether or not he successfully opted out of the Arbitration Provision"). Indeed, as one court put it, if the "issue of whether a [party] has opted out of the Arbitration Provision" must be determined by the arbitrator, this would "seemingly render the ability to opt-out illusory, at least as to the delegation provision": "how does one opt out of a delegation provision that requires you to arbitrate whether you opted out?" *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 893 n.8 (N.D. Ill. 2016).

Accordingly, whether Dodev opted out of the arbitration provision will be resolved first before the parties can be compelled to arbitrate. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021) (stating that courts must first "resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision" before determining whether challenges were made to the delegation provision specifically).

In analyzing "whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard." *Card v. Wells Fargo Bank, N.A.*, 611 F. Supp. 3d 1080, 1083 (D. Or. 2020); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." (quotation marks omitted)). Thus, "only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that an agreement to arbitrate existed." *Card*, 611 F. Supp. 3d at 1083 (citation modified). "Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, the Court must find no reasonable trier of fact could find an agreement was

made." *Singh v. Adobe Inc.*, 2025 WL 2197142, at *2 (N.D. Cal. 2025).

There is no genuine issue of fact concerning whether Dodev opted out of the arbitration agreement. Citibank offered declarations from Judy Delage, one of its employees, who averred that Citibank has no record that Dodev gave written notification that he opted out of the arbitration agreement and that it would have such record if Dodev had done so. (Doc. 14-1 at 4 (stating "Citibank's regular practice [is] to notate in the account records when a card member chose to reject the arbitration provision" and that her "review of [Dodev's] Account records" revealed that there was not a notation in Dodev's account); Doc. 19-2 ¶¶ 7–11.) Furthermore, Delage stated that it is Citibank's practice to (1) save correspondence from a customer to that customer's account file, (2) send a "denial or approval letter back to the customer confirming the decision regarding the customer's opt-out request" if Citibank receives a letter rejecting arbitration, and (3) save correspondence to customers from Citibank to that customer's account file. (Doc. 19-2 ¶¶ 7–9.) Dodev's account does not contain any record of such correspondence. (*Id.* ¶¶ 10–11.)

Dodev does not offer any evidence to rebut Delage's testimony, such as a sworn statement that he sent the opt-out notice or a copy of any receipt or proof of service. Instead, Dodev argues that he "found a draft of the Agreement's rejection in his computer that was sent via USPS first class mail on or about August 1, 2022." (Doc. 16 at 4.) Dodev could not find any letter from Citibank acknowledging his rejection of the arbitration agreement. (*Id.*) Dodev also argues—without evidence—that Citibank's "record keeping . . . is highly insufficient and subject to human errors and manipulation" and is, at least, a dispute of fact entitling him to a jury trial. (*Id.* at 5.)

This is insufficient to rebut Citibank's evidence. First, Dodev's unsworn allegations in his response are not evidence. *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987) (holding that "unsworn factual allegations" in briefing "do not constitute evidence"). Second, the draft letter does not establish that Dodev mailed it to Citibank. At most, the draft letter shows that Dodev contemplated opting out of the

arbitration agreement, not that he actually did so. Dodev's arguments that Citibank's recordkeeping is insufficient and subject to manipulation and error does not change this result, as an opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Tomada v. Home Depot U.S.A., Inc.*, 2014 WL 2538792, at *6 (N.D. Cal. 2014) (stating the nonmoving party "may not rest upon mere allegation, speculation, or denial of the adverse party's evidence"). Instead, "the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in its favor." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 (N.D. Cal. 2014). Dodev has not provided any affirmative evidence, so a trial is not warranted because "the record taken as a whole could not lead a rational trier of fact to find for [Dodev]." *See Matsushita*, 475 U.S. at 587 (quotation marks omitted).

Having determined that no genuine issue of material fact exists as to whether Dodev opted out of the arbitration agreement, the next question is whether Dodev challenged the delegation provision in the arbitration agreement specifically, as opposed to the arbitration provision or the contract as a whole. *See Brennan*, 796 F.3d at 1133; *see also StockX*, 19 F.4th at 880. Dodev has not made any such argument, as his challenges concern the arbitration provision generally, not the delegation provision itself. (Doc. 16 at 8–10 (arguing the arbitration agreement is not binding because it uses permissive language), 11– 12 (arguing the arbitration provision is unconscionable because it "lacks clear and straightforward language necessary to enforce binding arbitration" and is ambiguous such that it would require court interpretation and increase financial burdens).) Absent a challenge to the delegation provision itself, Dodev's arguments about the validity and enforceability of the arbitration provision should be directed to the arbitrator. *See Brennan*, 796 F.3d at 1130–33. The same is true for Dodev's arguments that Citibank waived its right to arbitrate. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (stating that the "presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability" (citation modified)).

Citibank's motion to compel arbitration is thus granted.  This action is stayed pending conclusion of the arbitration, per Citibank's request.  (Doc. 14 at 8–9.)  *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

## IV.    MOTION FOR LEAVE TO FILE A SUR-REPLY

On April 22, 2025, several months after the motion to compel arbitration became fully briefed, Dodev moved for leave to file a sur-reply in opposition to Citibank's motion to compel arbitration, arguing that Citibank's reply "raise[d] new arguments, including delegation of arbitrability" and "misappl[ied] South Dakota law."  (Doc. 23 at 1–2.)  He states that his proposed sur-reply would argue that Arizona law governs, the permissive language in the arbitration agreement "voids the agreement" and "negates 'clear and unmistakable' delegation," and that judicial scrutiny is warranted "in adhesion contracts where [Citibank is] alleged [to be] complicit[] in fraudulent charges."  (*Id.* at 5–6.)  Of these arguments, Dodev classifies the delegation and applicable law arguments as "new arguments" in Citibank's reply, but the other arguments are titled "Need to Clarify."  (*Id.* at 3–4 (emphasis omitted).)

Citibank opposed the motion, arguing that the arguments to which Dodev seeks to respond are not "new arguments" that could justify a sur-reply, and as for the arguments Dodev seeks to "clarify," a sur-reply is not proper to "embellish or clarify new arguments."  (Doc. 24 at 2–3.)

### A.    Legal Standard

"A sur-reply is appropriate when a party raises new issues or new evidence in a reply brief."  *ML Liquidating Tr. v. Mayer Hoffman McCann P.C.*, 2011 WL 10451619, at *1 (D. Ariz. 2011) (footnotes omitted).  "Arizona Local Rule of Civil Procedure 7.2 generally does not allow sur-replies," *Kurchack v. Life Ins. Co. of N. Am.*, 725 F. Supp. 2d 855, 857 n.1 (D. Ariz. 2010), nor do the Federal Rules of Civil Procedure, absent prior

court leave, *Lee v. City of Kingman*, 124 F. Supp. 3d 985, 986 n.1 (D. Ariz. 2015).  To warrant a sur-reply, the movant must "provide a compelling reason," *Kurchack*, 725 F. Supp. 2d at 857 n.1, because sur-replies are "generally discouraged and only allowed in the most extraordinary of circumstances," *Mesa v. DeJoy*, 2025 WL 1248926, at *7 (D. Ariz. 2025) (quotation marks omitted).

### B.    Discussion

Dodev's motion for leave to file a sur-reply is denied.  First, Dodev has not shown a compelling reason to justify this relief, particularly because he waited until the motion to compel arbitration had been fully briefed for months before moving to file a sur-reply.  Second, some of the arguments Dodev seeks to address in his proposed sur-reply do not respond to alleged new arguments in Citibank's reply, but instead pertain to arguments he already made in his response.  (*See* Doc. 23 at 3–4.)  Dodev is also incorrect that Citibank's reference to South Dakota law is a "new argument," (*id.* at 3), as Citibank argued in its motion that South Dakota and federal law applied to the arbitration agreement, (Doc. 14 at 6–7), and Dodev argued in his response that Arizona law applied, (*see generally* Doc. 16; *id.* at 4).  Dodev was therefore not prejudiced by any argument made by Citibank in its reply.  *See Lu v. United States*, 921 F.3d 850, 864 n.12 (9th Cir. 2019) (affirming denial of leave to file sur-reply where the movant could not "show that it was prejudiced" by the denial).  Moreover, even if the question of what law applied to the arbitration agreement was a new argument Citibank made in its reply brief, this issue is not pertinent to resolution of the motion to compel arbitration in light of federal precedent requiring arbitration of arbitrability and other issues.  *See Walker v. Gallegos*, 167 F. Supp. 2d 1105, 1108 n.3 (D. Ariz. 2001) (denying request to file sur-reply where it would "not aid the decisional process given the Court's determination . . . of the governing law").

Third, to the extent Dodev is correct that delegation was a new argument in Citibank's reply brief, Dodev's proposed arguments would not alter the result that arbitration is required.  Dodev does not offer any argument or evidence that would create a genuine issue of material fact about whether he opted out of the arbitration agreement.

*Cf. Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 853 (D. Ariz. 2021) (denying motion for sur-reply where the proposed "evidence did not affect the outcome of either party's motion for summary judgment"). He also does not specifically challenge the delegation provision, as opposed to the arbitration agreement as a whole, that would require court resolution. (*See* Doc. 23 at 4 ("Defendant's delegation argument assumes the Arbitration Agreement's validity. Plaintiff must argue that the permissive language invalidates the *agreement's formation*, including the AAA Rules' delegation clause . . . ." (emphasis added)). *See Brennan*, 796 F.3d at 1133. Furthermore, Dodev does not propose any arguments that would distinguish the binding precedent discussed above requiring arbitration.

Because many of the arguments Dodev proposes are not the proper subject of a sur-reply, and any proposed new arguments would not change the Court's analysis or conclusions, there is not a "compelling reason" or "extraordinary circumstances" warranting a sur-reply, so Dodev's motion is denied. *DeJoy*, 2025 WL 1248926, at *7; *Kurchack*, 725 F. Supp. 2d at 857 n.1.

Accordingly,

**IT IS ORDERED** that Citibank's motion to compel arbitration (Doc. 14) is **granted**.

**IT IS FURTHER ORDERED** that this action is stayed pending completion of the parties' arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Status Report within one week of the arbitrator's decision or six months of this Order, whichever is sooner.

**IT IS FURTHER ORDERED** that Dodev's motion for leave to file a sur-reply (Doc. 23) is **denied**.

Dated this 15th day of August, 2025.

Honorable Sharad H. Desai
United States District Judge